# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 24-M-601
The PREMISES is the property to be searched, 2031 Regency Ct, Apt 5, )
Appleton, Wisconsin, further described as a 1-bedroom, 1-bath )
apartment, including its storage unit in the basement, and its )
common-area mailbox. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(d)(1) and 922(g)(1) | Providing firearms to felons<br>Possession of firearm by a felon |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

BRADLEY KURTZWEIL  Digitally signed by BRADLEY KURTZWEIL
Date: 2024.01.02 16:02:45 -06'00'

*Applicant's signature*

Bradley Kurtzweil, ATF SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means)*.

Date: 1/2/2024

*Judge's signature*

City and state: Green Bay, WI                Magistrate Judge James R. Sickel
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT
# UNDER RULE 41

I, Bradley Kurtzweil, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the residence occupied by Junior A. ANDERSON (DOB xx/xx/1995) known as 2031 Regency Ct, Apt 5, Appleton, Wisconsin, hereinafter "PREMISES", further described in Attachment A.

2. I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since March 2020. My duties with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3. I completed approximately 26 weeks of training (approximately 1000 hours) at the Federal Law Enforcement Training Center (Glynco, Georgia) and ATF's National Academy. The training included courses on constitutional law such as search and seizure, and conducting investigations through searches, arrests, interviews, surveillance, and evidence collection.

4. During my time at ATF, I have attended specialized training from the ATF related to the determining the interstate nexus of firearms and ammunitions. I regularly perform physical examinations of firearms for various purposes, including a determination of interstate/foreign commerce nexus and appropriate classification under the Gun Control Act of 1968 and related statutes and regulations. Additionally, I frequently conduct research by referencing industry-related public reference materials widely utilized by law enforcement and civilian firearms experts, manufacturer's websites, law enforcement reports, records maintained by ATF as part of

its function to regulate the firearms and ammunition industry, as well as conversations with manufacturers and/or other experts in the industry.

5. Prior to joining ATF, I was a sworn Police Officer in the State of Illinois from March 2011 to March 2020. I completed 12 Weeks (approximately 480 hours) of basic training at the Illinois State Police Academy from April 2011 to June 2011. I was a patrol officer with the Bolingbrook (IL) Police Department from December 2012 to March 2020, and an Evidence Technician for patrol from July 2017 to March 2020. As a Police Officer, I attended approximately 520 hours of additional training in areas including evidence collection, interview/interrogation, arson and explosives, gang investigations, and drug investigations.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

7. For terms in this affidavit including "firearm," "ammunition," handgun," "privately made firearm," and others, I rely on definitions in the United States Code and implementing regulations. See, e.g., 18 U.S.C. § 921, 27 CFR §§ 478.11 & 478.12(a)(1).

8. Federal law requires licensed manufacturers to mark their firearms with the manufacturer's name, location (city and state); model, serial number, and caliber; and where applicable, the importer if manufactured outside of the United States.

9. "Privately made firearms" (or "PMFs") are made by unlicensed manufacturers. (See 27 CFR § 478.11: "A privately made firearm [is a] firearm, including a frame or receiver, completed, assembled, or otherwise produced by a person other than a licensed manufacturer, and without a serial number placed by a licensed manufacturer at the time the firearm was

produced." PMFs are not inherently unlawful to possess, but because they meet the definition of a firearm, their manufacture, sale, transfer, and possession are subject to applicable federal laws and regulations. For instance, convicted felons and other prohibited persons cannot lawfully possess firearms.

10. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 922(d)(1) (providing firearms to felons) and 922(g)(1) (possession of firearm by a felon) have been committed by Junior A. ANDERSON (DOB xx/xx/1995). There is also probable cause to search the PREMISES, further described in Attachment A.

11. This affidavit is based in part on information provided by a confidential informant (CI). CI has a criminal history consisting of two felony and six misdemeanor convictions. CI has agreed to cooperate with law enforcement based on pending charges filed by the Winnebago County District Attorney's Office. CI is on bond for the charges and has not received specific promises regarding the impact of any cooperation on CI's case; rather, law enforcement has agreed to notify the prosecutor of CI's cooperation, leaving any consideration to the prosecutor's discretion. CI is not receiving monetary compensation for cooperating in this investigation. CI has a known history of illegal drug use, but officers are not aware that any drug use occurred during this investigation or impacted CI's ability to perceive and recall events. CI has provided reliable information to law enforcement in the past including corroborated information pertaining to the target of this investigation. CI does not have any convictions for perjury, fraud, lying or misrepresentation. CI has provided information to law enforcement which has been independently corroborated by physical surveillance and phone calls. CI has also provided information against CI's own penal interest.

3

12. To prevent disclosure of CI's identity, this affidavit contains a general summary of CI's criminal history, factors impacting CI's credibility, and CI's perceived motivation to cooperate with law enforcement. Affiant knows that disclosure of CI's identity could impact CI's willingness to continue to cooperate with law enforcement, jeopardize CI's safety, and discourage others from cooperating with law enforcement in the future.

## PROBABLE CAUSE

13. On 11/03/2023, Lake Winnebago Area Metropolitan Enforcement Group (LWAM) Drug Investigator Troy Brandl received information from CI that a person known to CI as "Jay Moe" had two firearms for sale. CI stated the firearms were a "1911 style" and a "Glock style with extended magazine."

14. On 11/03/2023, CI provided screenshots of the Facebook Messenger conversation between "Jay Moe" and CI to Inv. Brandl. On 11/06/2023, CI allowed officers to review the content of the Facebook Messenger conversation between CI and "Jay Moe" on CI's phone, which showed the firearms in question, as well as a profile picture and profile display name for "Jay Moe's" Facebook Messenger account.

15. CI related they only know ANDERSON as "Jay Moe," and they only communicate via messages and phone calls made via the Facebook Messenger application. "Jay Moe" told CI that "Jay Moe" received the firearms from "Work." CI utilized the Facebook Messenger application to set up the firearms purchase with ANDERSON.

16. Utilizing publicly available pictures on "Jay Moe's" Facebook page and comparing it to Wisconsin Department of Transportation photos and Wisconsin Department of Corrections photos, officers positively identified "Jay Moe" as ANDERSON.

4

Case 1:24-mj-00601-JRS    Filed 01/02/24    Page 5 of 17    Document 1

17. Officers also identified ANDERSON's unique Facebook account User ID number: 100081518656549.

18. A record check of ANDERSON's criminal history and the Wisconsin Circuit Court online system indicates that ANDERSON was previously convicted of two felonies in 2015 and 2016: Robbery with Threat of Force (Milwaukee County 2015CF2015); and Endanger Safety/Reckless Use of Firearm (Dane County 2016CF873).

19. On 11/06/2023, LWAM and ATF utilized CI to conduct a controlled purchase of the following two firearms from ANDERSON for $1,200 U.S. Currency in recorded buy money: a privately made firearm (PMF), namely, a 9-mm pistol with no serial number; and a Browning, Hi Power, 9-mm pistol with serial number 245NZ52041 (**Figure 1**, below). After the controlled buy, CI met with officers, turned over the firearms purchased from ANDERSON, and provided a statement about the events during the buy. CI said that ANDERSON had provided CI with the firearms in a backpack. ANDERSON told CI that ANDERSON could get more firearms. CI stated that in addition to ANDERSON, there was a second male in the vehicle with ANDERSON, and that this unknown male told CI that he could get firearms for CI as well.



**Figure 1**

20. Before and after the controlled buy, officers searched CI, finding no firearms or currency other than the firearms purchased from ANDERSON and the recorded buy money. CI was outfitted with an audio and video transmitter for officers to monitor while conducting physical surveillance of the buy. CI indicated that ANDERSON knows CI is a convicted felon because CI told Anderson that CI had previously served time in prison.

21. Officers who conducted surveillance before and after the controlled purchase positively identified ANDERSON as the driver of the vehicle in which the purchase occurred.

22. Affiant examined the two pistols that CI bought from ANDERSON. Based on affiant's training, knowledge, and experience of the firearms industry, and as an ATF interstate-nexus agent, (i) the Browning Hi Power pistol is a firearm as defined in 18 U.S.C. § 921(a)(3) and traveled in interstate or foreign commerce before ANDERSON possessed it on 11/6/2023 since it was not manufactured in the State of Wisconsin; and (ii) the PMF 9-mm pistol that CI bought from ANDERSON is a firearm as defined in 18 U.S.C. § 921(a)(3) and was possessed in or affecting interstate commerce.

23. Affiant test-fired both pistols to obtain casings for entry into the National Integrated Ballistic Information Network (NIBIN). Upon entry, a NIBIN lead was generated indicating that the PMF was possibly used in a shooting in Kenosha, Wisconsin in July of 2023.

24. On 11/30/2023, Affiant contacted the United States Postal Inspector's Office and received a photo of a shipping label for a package (**Figure 2,** below), which had recently been delivered to ANDERSON's residence, a/k/a the PREMISES. The label indicated that the package came from MMC Armory Fulfillment Center in Orem, Utah. From the tracking information on the package, it was delivered to ANDERSON at the PREMISES on 11/20/2023.

6



**Figure 2**

25. Affiant obtained records from MMC Armory, which indicated ANDERSON had ordered a "Polymer80 PF940C Compact 80% Blank – Black" receiver on 11/14/2023.

26. On 12/18/2023, ATF and LWAM utilized CI to arrange a controlled purchase of another PMF for $600 from ANDERSON, namely, a 9-mm pistol with no serial number. After the controlled buy, CI met with officers, turned over the firearm purchased from ANDERSON, and provided a statement about the buy. CI said that upon entering the vehicle, CI told ANDERSON: "You know I'm a felon, that's why I'm late." CI stated there was another male in the vehicle who the CI didn't know. CI was unsure if the unknown male was the same male present during the first controlled gun purchase from ANDERSON. CI paid the unknown male for the firearm and the unknown male provided CI with the firearm. The unknown male told CI that the next transaction would be for a discounted price of $500. Affiant examined the frame/receiver of the purchased firearm and saw that it was the same color and model as ANDERSON had purchased on 11/14/2023 (**Figure 3 and Figure 4**).

7



**Figure 3**



**Figure 4**

27. Before and after the second controlled buy, officers searched CI, finding no firearms other than the firearms purchased from ANDERSON and the buy money. CI was outfitted with an audio and video transmitter for officers to monitor while conducting physical surveillance of the buy.

28. On 12/28/2023, Affiant was advised by the United States Postal Inspector Service of a package in transit from Delta Team Tactical in Orem, Utah addressed to ANDERSON at the PREMISES. The package is scheduled for delivery on 01/02/2023.

29. On 01/02/2023, affiant obtained records from Delta Team Tactical which indicated ANDERSON had placed an additional MMC Armory order on 12/17/2023 for an "ELD Performance Frame Kit Compatible with G17 & G19 Gen 3 (includes Springs for Full

8

Size and Compact Frames)" and a "MMC 'Second take' 9mm complete slide kit – Glock 19 Gen 1-3 Compatible." These items were shipped via USPS and delivered at PREMESIS on 12/28/2023. Affiant also learned that ANDERSON had placed an order with Delta Team Tactical for a "Geisler Defence Jig and Drill Bits for Geisler 80% Frames," and a "DTT 'Pit Viper' 9mm Full Pistol Build Kit (Everything minus Frame) – Glock 19 Gen 1-3 Compatible." These items were shipped via USPS and delivered to ANDERSON at PREMISES on 12/29/2023.

30. ANDERSON has been in custody since 12/23/2023, when the Winnebago County Sheriff's Office and Oshkosh Police Department responded to a "Shots fired call." Officers observed ANDERSON's vehicle in the area where the shots were reported and conducted a traffic stop. No firearms were recovered, but ANDERSON was in possession of 69 MDMA pills, a Schedule I controlled substance that is commonly referred to as "Ecstasy." ANDERSON was arrested and placed on a probation hold.

31. Affiant knows that both MMC Armory and Delta Team Tactical are entities based in Orem, Utah, which sell firearms, firearms parts, and firearms assembly kits/instructions. When those entities sell a firearm—the definition of which includes a frame or receiver—to a customer in another state like Wisconsin, federal law requires them to make the transfer through a Federal Firearms Licensee (FFL). The FFL must have the transferee complete an ATF Form 4473 and undergo a background check.

32. Affiant also knows that persons may seek to avoid going through an FFL by purchasing a frame or receiver that has not been completely manufactured, commonly referred to as a "80% receiver," and all the parts necessary to assemble a firearm, including the trigger kits, assembly kits and instructions on how and where to drill holes in the frame/receiver. As a result, the person does not complete an ATF Form 4473 or undergo a background check.

9

33. These parts are often purchased via online retailer or website (like MMC Armory and Delta Team Tactical) and shipped via the United States Postal Service or other common carrier to a residence or business anywhere in the United States.

34. It is reasonable to believe that recipients of these firearms parts keep certain components and evidence of such components at secure places, including their residence, particularly where packages have been shipped and are scheduled to be shipped.

35. In addition to the information already discussed herein indicating that ANDERSON resides at the PREMISES, Affiant also knows:

   a. The PREMISES is ANDERSON's current address with the Wisconsin Department of Transportation;

   b. ANDERSON is on active probation through the State of Wisconsin and has registered that address with his Probation and Parole agent;

   c. Law Enforcement surveilled ANDERSON after the first controlled firearms purchase on 11/06/2023 and saw him enter the apartment building where the PREMISES is located;

   d. Affiant surveilled the address on 12/18/2023, before the second controlled firearm purchase and observed ANDERSON's vehicle parked at the same apartment building in the spot for Unit #5 corresponding to the PREMISES;

   e. ANDERSON receives mail and packages at the PREMISES; and

   f. Affiant spoke to management at the same apartment complex who confirmed ANDERSON has an active lease solely in his name at the PREMISES.

## CONCLUSION

I submit that this affidavit provides probable cause for a warrant to search the PREMISES, described in Attachment A to seize the items described in Attachment B.

_____
Special Agent Bradley Kurtzweil
Bureau of Alcohol, Tobacco, Firearms and Explosives

Digitally signed by BRADLEY KURTZWEIL
Date: 2024.01.02 16:02:06 -06'00'

Sworn to before me telephonically this ____ day of January 2024,

_____
Honorable James R. Sickel
United States Magistrate Judge
Eastern District of Wisconsin

11

Case 1:24-mj-00601-JRS    Filed 01/02/24    Page 12 of 17    Document 1

## ATTACHMENT A

*Property to be searched*

The PREMISES is the property to be searched, 2031 Regency Ct, Apt 5, Appleton, Wisconsin, further described as a 1-bedroom, 1-bath apartment, including its storage unit in the basement, and its common-area mailbox. The building has a brick exterior with a parking lot on the west side. There is an entrance/exit on the east and west sides of the building. The entrance door on the west side has the numbers "2031" displayed. The entrance/exit doors are not secured and allow undeterred access to the common areas of the building. The mailbox is in a downstairs common area inside the main entrance, labeled by apartment number. There is a staircase inside both the east and west doors. Apartment 5 is at the top of the west stairway and marked with a "5" on the exterior of the door. There are also two stairways which lead to a common basement area. Within the basement are storage units for each apartment, labeled with the number corresponding to the tenant's apartment. The storage units may be locked or unlocked based on the resident's preference.

# ATTACHMENT B

*Property to be seized*

All records relating to violations of Title 18, United States Code, Sections 922(d)(1) and 922(g)(1), involving Junior A. ANDERSON, including:

a. information regarding the identities of any perpetrators and/or co-conspirators;

b. information or receipts pertaining to firearms purchases and/or sales;

c. information concerning ANDERSON's schedule, travel, and/or location at particular relevant times;

d. relevant bank records, checks, credit card bills, account information, and other financial records;

e. relevant photos, videos, IP addresses, contact information, and contact lists;

f. text messages, social media messages and content, SMS messages, iMessage data, relating to the sale and/or trade of narcotics and/or firearms;

g. electronic mail to include the content of the emails, and associated email addresses, relating to the sale and/or trade of narcotics and/or firearms;

h. Computers or storage media used as a means to commit or facilitate the violations described above, including cellular phones;

i. Any firearms, firearms parts, or ammunition possessed by ANDERSON or otherwise involved in the commission of the offense(s);

13

For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

   h. evidence of the times the COMPUTER was used;

14

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

The terms "records" and "information" include all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

During the execution of the search of the PREMISES described in Attachment A, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of any individual, who is found at the subject premises and reasonably believed by law enforcement to be a user of a device found at the premises, to the fingerprint scanner of the device; (2) hold a device found at the premises in front of the face those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.